IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PENDLETON DIVISION

JODY A.,[1]

        Plaintiff,

v.

COMMISSIONER, SOCIAL
SECURITY ADMINISTRATION,

        Defendant.

Case No. 6:24-cv-01019-HL

**OPINION AND ORDER**

HALLMAN, United States Magistrate Judge:

    Plaintiff Jody A. brings this action under the Social Security Act (the "Act"), 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the Commissioner of Social Security ("Commissioner"). The Commissioner denied plaintiff's application for Social Security Income ("SSI") under Title II of the Act. 42 U.S.C. § 401 et seq. For the following reasons, the decision of the Commissioner is AFFIRMED.

---

[1] In the interest of privacy, this Opinion uses only the first name and the initial of the last name for non-governmental parties and their immediate family members.

PAGE 1 – OPINION AND ORDER

**STANDARD OF REVIEW**

42 U.S.C. § 405(g) provides for judicial review of the Social Security Administration's disability determinations: "The court shall have power to enter . . . a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." The court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quotation omitted). The court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusion." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). "Where the evidence as a whole can support either a grant or a denial, [the court] may not substitute [its] judgment for the ALJ's." *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007) (citation omitted); *see also Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) (holding that the court "must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation"). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quotation omitted).

**BACKGROUND**

**I.      Plaintiff's Application**

Plaintiff alleges disability based on post-traumatic stress disorder ("PTSD"), bipolar disorder, depression, a "left shoulder and arm" condition, loss of hearing, traumatic brain injury

("TBI"), and groin and ankle pain. Tr. 214.[2] At the time of her alleged onset date, she was 43 years old. Tr. 64. She has a tenth grade level education and no past relevant work. Tr. 215, 19.

Plaintiff protectively applied for SSI on April 19, 2021, alleging an onset date of September 15, 2020. Tr. 64-65. Her application was denied initially on October 20th, 2021, and on reconsideration on April 6, 2022. Tr. 102, 112. Plaintiff subsequently requested a hearing, which was held on July 6, 2023, before Administrative Law Judge ("ALJ") Jason Crowell. Tr. 32. Plaintiff appeared and testified at the hearing, represented by counsel; vocational expert ("VE"), Terri Marshall also testified. *Id.* On August 10th, 2023, the ALJ issued a decision denying plaintiff's claim. Tr. 7. Plaintiff requested Appeals Council review, which was denied on April 22, 2024. Tr. 1-3. Plaintiff then sought review before this Court.[3]

## II.   Sequential Disability Process

The initial burden of proof rests upon the claimant to establish disability. *Howard v. Heckler*, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, the claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner has established a five-step process for determining whether a person is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520, 416.920. At step one, the Commissioner determines whether a claimant is engaged in "substantial gainful activity"; if so, the claimant is not disabled. *Yuckert*, 482 U.S. at 140; 20 C.F.R. §§ 404.1520(b), 416.920(b).

---

[2] Citations to "Tr." are to the Administrative Record. (ECF 7).

[3] The parties have consented to the jurisdiction of a Magistrate Judge pursuant to 28 U.S.C. § 636. (ECF 1).

PAGE 3 – OPINION AND ORDER

At step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140-41; 20 C.F.R. §§ 404.1520(c), 416.920(c). A severe impairment is one "which significantly limits [the claimant's] physical or mental ability to do basic work activities[.]" 20 C.F.R. §§ 404.1520(c) & 416.920(c). If not, the claimant is not disabled. *Yuckert*, 482 U.S. at 141.

At step three, the Commissioner determines whether the impairments meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Id.*; 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the analysis proceeds. *Yuckert*, 482 U.S. at 141. At this point, the Commissioner must evaluate medical and other relevant evidence to determine the claimant's "residual functional capacity" ("RFC"), an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations her impairments impose. 20 C.F.R. §§ 404.1520(e), 404.1545(b)-(c), 416.920(e), 416.945(b)-(c).

At step four, the Commissioner determines whether the claimant can perform "past relevant work." *Yuckert*, 482 U.S. at 141; 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant can work, he is not disabled; if she cannot perform past relevant work, the burden shifts to the Commissioner. *Yuckert*, 482 U.S. at 146 n.5.

Finally, at step five, the Commissioner must establish that the claimant can perform other work that exists in significant numbers in the national economy. *Id.* at 142; 20 C.F.R. §§ 404.1520(e) & (f), 416.920(e) & (f). If the Commissioner meets this burden, the claimant is not disabled. 20 C.F.R. §§ 404.1566, 416.966.

PAGE 4 – OPINION AND ORDER

**III.   The ALJ's Decision**

At step one, the ALJ determined that plaintiff had not engaged in substantial gainful activity after April 19th, 2021, plaintiff's application date. Tr. 12.

At step two, the ALJ determined that plaintiff has the following severe impairments: "obesity; degenerative disc disease cervical spine; left elbow arthritis; tear of left acetabular labrum; hearing loss; bipolar disorder; anxiety; panic disorder; and post-traumatic stress disorder." Tr. 16.

At step three, the ALJ determined that plaintiff's impairments did not meet or medically equal the severity of a listed impairment. Tr. 13. The ALJ then resolved that plaintiff had the RFC to perform less than the full range of light work, with the following limitations:

> She can sit for 30 minutes at a time before switching to standing or walking; walk for one hour at a time before switching to sitting or standing; must avoid walking on uneven surfaces; occasionally climb, stoop, kneel, crouch, and crawl; occasionally handle and reach with the non-dominant left upper extremity; and must avoid work environments with greater than a moderate level of noise, as the term "moderate" is defined in the Selected Characteristics of Occupations. Additionally, she would be limited to simple, routine, and repetitive tasks, in a work environment free of fast-paced production requirements, involving only simple work-related decisions, few workplace changes, and only occasional interaction with the public, co-workers, and supervisors.

Tr. 14.

At step four, the ALJ found that plaintiff has no past relevant work. Tr. 19.

But at step five—considering plaintiff's age, education, work experience, and RFC—the ALJ found that a significant number of jobs existed in the national economy that plaintiff could perform, including work as a mail sorter, office helper, and routing clerk. Tr. 20. Thus, the ALJ concluded that plaintiff is not disabled. Tr. 21.

## DISCUSSION

Plaintiff argues the ALJ committed two errors: (1) failing to provide clear and convincing reasons to reject plaintiff's symptom testimony concerning the use of her left arm; and (2) improperly discrediting the medical opinions of her consultative examiner, Derek Leinenbach, MD, and the doctors who reviewed her file, Karine Lancaster, MD, and Keven Cuccaro, DO. For the reasons discussed below, the Commissioner's decision denying plaintiff's claim is affirmed.

### I.    Subjective Symptom Testimony

#### A.    Legal standards.

The ALJ is responsible for evaluating symptom testimony. SSR 16-3p, 2017 WL 5180304, at *1 (Oct. 25, 2017). There is a two-step process for evaluating a claimant's testimony about the severity and limiting effect of her symptoms. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). First, the claimant must produce objective medical evidence of one or more impairments that could reasonably be expected to produce some degree of symptoms. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). The claimant need not show that the impairment could reasonably be expected to cause the severity of the symptoms, but only show that it could reasonably have caused some degree of the symptoms. *Id.*

Second, the ALJ must assess the claimant's testimony regarding the severity of the symptoms. *Id.* The ALJ can reject the claimant's testimony "only by offering specific, clear and convincing reasons for doing so." *Id.* Thus, the ALJ must specifically identify the testimony they do not credit and explain what evidence undermines the testimony. *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001). In other words, the "clear and convincing" standard requires an ALJ to "show [their] work." *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022).

General findings are insufficient to support an adverse determination; the ALJ must rely on substantial evidence. *Holohan*, 246 F.3d at 1208. To discredit a plaintiff's testimony regarding the degree of impairment, the ALJ must make a "determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony." *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002). If the ALJ's finding on the claimant's subjective symptom testimony is "supported by substantial evidence in the record, [the court] may not engage in second-guessing." *Id.* at 959 (internal citation omitted). Therefore, the question is not whether ALJ's rationale convinces the court, but whether their rationale "is clear enough that it has the power to convince." *Smartt*, 53 F.4th at 499.

### B.  Plaintiff's Testimony.

Plaintiff's sole complaint with the ALJ's analysis of her testimony concerns the ALJ's rejection of plaintiff's left arm testimony. Plaintiff's testimony at issue is limited; she testified only that she does not have full use of her left arm because her "fingers get stuck" and she experiences a "shocking sensation" along her arm. Tr. 40. She then stated that she has problems holding things with her left hand and "automatically drop[s] things . . . out of nowhere." Tr. 40.

After summarizing plaintiff's testimony, the ALJ determined that her medically determinable impairments could reasonably be expected to produce some degree of symptoms, but her "statements concerning the intensity, persistence and limiting effects of those symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." Tr. 15. Specifically, the ALJ noted "the severity of symptoms alleged insofar that they would prevent the claimant from performing fingering and feeling activities . . . are not entirely consistent with the record." Tr. 18.

In discounting this testimony, the ALJ explained how plaintiff's testimony conflicts with her consultative physical exam and is undermined by her failure to seek treatment for her alleged left arm limitations. This Court discusses each ground below:

### B.     Objective Medical Evidence.

An ALJ may reject a claimant's symptom testimony if that testimony is contradicted by evidence in the medical record. *Carmickle*, 533 F.3d at 1161; *see also Smartt*, 53 F.4th at 498 ("When objective medical evidence in the record is inconsistent with the claimant's subjective testimony, the ALJ may indeed weigh it as undercutting such testimony."). While an ALJ may also consider the lack of corroborating objective medical evidence as one factor in "determining the severity of the claimant's pain," *Rollins*, 261 F.3d at 857, they cannot reject subjective pain testimony solely on that basis. *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006); *see also* 20 C.F.R. § 404.1529(c)(2) (the Commissioner "will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements"). In sum, "an ALJ cannot effectively render a claimant's subjective symptom testimony superfluous by demanding positive objective medical evidence 'fully corroborat[ing]' every allegation within the subjective testimony." *Smartt*, 53 F.4th at 498 (quoting *Burch*, 400 F.3rd at 681).

Here, the ALJ reasoned that plaintiff's testimony regarding her left arm limitations are inconsistent with her consultative exam in which plaintiff "did not display any difficulty performing manipulative activities or grasping/gripping objects." Tr. 18, 406-07. In support, the ALJ noted plaintiff "removed and replaced her shoes without assistance," her "hand and finger

strength were noted to be normal," and that while "a 'weakly positive' Tinel's at the left elbow was noted . . . it was negative at the wrist." Tr. 12, 18, 406-407. The ALJ continued:

> [r]egarding her fine and gross motor skills, both thumbs had normal opposition, she was able to grasp and then manipulate both small and large objects with her first three digits, and she could grip and securely hold objects. She had full strength and normal muscle bulk and tone. Sensation was intact, except for "mild relative dullness to light touch in the left little finger." Her cranial nerves were grossly intact, and she displayed 1+deep tendon reflexes in her upper and lower extremities.

Tr. 17 (quoting Tr. 407).

The ALJ's citation to these objective findings is "sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony." *Thomas*, 278 F.3d at 958. This objective evidence is therefore a clear and convincing reason, supported by substantial evidence, for discounting plaintiff's subjective symptom testimony.

### D. Failure to seek treatment.

A claimant's treatment record is relevant to an ALJ's evaluation of subjective complaints. *See* 20 C.F.R. §§ 404.1529(c)(1)–(3), 416.929(c)(1)–(3). Indeed, "[u]nexplained, or inadequately explained, failure to seek treatment," absent a good reason, can suffice as a clear and convincing rationale to discount testimony. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). Nonetheless, ALJs are required to consider "any explanations that the individual may provide, or other information in the case record, that may explain" the failure to follow a treatment plan. *Orn*, 495 F.3d at 638 (quotation omitted); *see also* SSR 16-3p at *9 ("We will not find an individual's symptoms inconsistent with the evidence in the record on this basis without considering possible reasons he or she may not comply with treatment or seek treatment consistent with the degree of his or her complaints").

Here, the ALJ highlighted how plaintiff's left arm complaints were inconsistent with her lack of recent treatment for her musculoskeletal complaints while acknowledging plaintiff "stated there have been some problems following up with orthopedics." Tr. 18. The ALJ concluded however, that because "there is little indication of additional attempts to follow up with treatment or imagining in the past two years," plaintiff's treatment history is inconsistent with a limitation that would prevent "claimant from performing fingering and feeling activities." Tr. 18.[4] Thus, the ALJ provided a clear and convincing reason to discount plaintiff's testimony while appropriately considering plaintiff's reasoning for not seeking treatment for her left arm.

In sum, the ALJ provided two clear and convincing reasons supported by substantial evidence for discounting plaintiff's subjective symptom testimony.

## II. Medical Opinion Evidence

### A. Legal standards.

Where, as here, the plaintiff's application is filed on or after March 27, 2017, the ALJ is no longer tasked with "weighing" medical opinions, but rather must determine which are most "persuasive." 20 C.F.R. §§404.1520c(a)-(b); 416.920c(a)-(b). "To that end, there is no longer any inherent extra weight given to the opinions of treating physicians . . . the ALJ considers the 'supportability' and 'consistency' of the opinions, followed by additional sub-factors, in

---

[4] Plaintiff was referred to physical therapy at AIM Therapies on February 2nd, 2021, to address her hip pain and diagnoses of "[b]ursitis of left hip, unspecified bursa" and "[u]nspecified injury of muscle, fascia and tendon of left hip." Tr. 266. Plaintiff began attending physical therapy on March 25, 2021. Tr. 270. Upon arrival at AIM Therapies, plaintiff complained of "[left] hip groin and [left] heel pain also, over a year, insidious deep groin pain, does like certain positions to be in, sleeping is the worse, will wake her up, sharp stabbing in [left] hip/groin." Tr. 270. Plaintiff was observed and given exercises for treatment. Tr. 272. Plaintiff attended physical therapy five more times in the next few months. Tr. 278, 285, 289, 296, 299. During plaintiff's six physical therapy appointments, she complained only of left leg pains and never complained of pains or difficulties in her left arm. Tr. 270-77, 278-79, 285-88, 289-90, 296-98, 299-300.

determining how persuasive the opinions are." [5] *Kevin R. H. v. Saul*, 2021 WL 4330860, at *4 (D. Or. Sept. 23, 2021). The ALJ must "articulate . . . how persuasive [they] find all of the medical opinions" and "explain how [they] considered the supportability and consistency factors." *Id.*

The factors of "supportability" and "consistency" are considered to be "the most important factors" in the evaluation process. 20 C.F.R. §§ 404.1520c(c), 416.920c(c). Supportability means the extent to which a medical source supports the medical opinion by explaining the "relevant . . . objective medical evidence." *Woods* 32 F.4th at 791-92 (citing 20 C.F.R. § 404.1520c(c)(1)). Consistency means the extent to which a medical opinion is "consistent . . . with the evidence from other medical sources and nonmedical sources in the claim." *Id.* (citing 20 C.F.R. § 404.1520c(c)(2)). In evaluating the "supportability" and "consistency" of a medical opinion, the ALJ is not required to articulate how each individual medical opinion was considered. For example, where a single medical source provides more than one medical opinion, the ALJ will generally address the source's medical opinions together in a single analysis. 20 C.F.R. §§ 404.1520c(b)(1), 416.920c(b)(1).

An ALJ must articulate how persuasive the ALJ finds the medical opinions and explain how the ALJ considered the supportability and consistency factors. 20 C.F.R. §§ 404.1520c(a), (b), 416.920c(a), (b); *see Tyrone W. v. Saul*, No. 3:19-CV-01719-IM, 2020 WL 6363839, at *7 (D. Or. Oct. 28, 2020). "The ALJ may but is not required to explain how other factors were

---

[5] As the Ninth Circuit recently explained, "[u]nder the revised regulations . . . a medical source's relationship with the claimant is still relevant when assessing the persuasiveness of the source's opinion." *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022). The new regulations nonetheless "displace our longstanding case law requiring an ALJ to provide" different levels of reasoning (i.e., "clear and convincing" or "specific and legitimate") based on a hierarchy of medical sources. *Id.* at 787.

PAGE 11 – OPINION AND ORDER

considered, as appropriate, including relationship with the claimant (length, purpose, and extent of treatment relationship; frequency of examination); whether there is an examining relationship; specialization; and other factors, such as familiarity with other evidence in the claim file or understanding of the Social Security disability program's policies and evidentiary requirements." *Linda F. v. Comm'r Soc. Sec. Admin.*, No. C20-5076-MAT, 2020 WL 6544628, at *2 (W.D. Wash. Nov. 6, 2020). An ALJ's decision to discredit a medical opinion must be supported by substantial evidence. *Woods* 32 F.4th at 787.

"An ALJ can satisfy the substantial evidence requirement by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014). In other words, "[t]he ALJ must do more than offer his conclusions . . . [h]e must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998). "Although [the reviewing court] will not fault the agency merely for explaining its decision with less than ideal clarity, we still demand that the agency set forth the reasoning for its decision in a way that allows for meaningful review." *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2017) (internal citation and quotation marks omitted).

A.  **Dr. Leinenbach**

Dr. Leinenbach performed a consultative physical examination of plaintiff in September 2021. Tr. 405. Plaintiff informed Dr. Leinenbach of her 2005 ATV accident in which she "sustained multiple injuries, including several rib fractures, bilateral pneumothorax, left clavicular fractures, liver and spleen lacerations, and a traumatic brain injury." *Id.* Plaintiff then reported "recurrent 'shocking pain' that radiates along the left triceps area and into the forearm,"

an aching pain in the left elbow, and that she "cannot fully extend the elbow since her accident."[6] *Id.* She continued to describe her "recurrent aching pain in the left hip area, which radiates to the groin" – which can sometimes be very sharp – as well as her partial bilateral hearing loss. *Id.*

During the physical portion of the exam, plaintiff did not present in acute distress, walked into the exam without assistance, removed and replaced her shoes without assistance, and got on and off the examination table without assistance. Tr. 406. Plaintiff exhibited normal range of motion of neck, back, shoulders, wrists, right elbow, right forearm, thumb/fingers, hips, knees, and ankles. Tr. 407. The examination found that Plaintiff's left elbow "lacks 15 degrees of extension, flexion is full" and her left forearm pronates 60 degrees and has full supination. *Id.* Plaintiff's left elbow could not fully extend, Tinel's test was weakly positive at the left elbow but negative on the left wrist; Tinel's test was negative on the right elbow and wrist. *Id.*

Based on plaintiff's statements and the physical exam, Dr. Leinenbach found that plaintiff "can grip and hold objects securely to the palm by the last three digits. She can grasp and manipulate large and small objects with the first three digits. Both thumbs function with normal opposition." *Id.* Plaintiff's motor strength was 5/5 in both left and right upper and lower extremities, including "bilateral grips." Tr. *Id.* Lastly, plaintiff exhibited intact "[s]ensation to light touch and pinprick . . . throughout the extremities" and "reports mild relative dullness to light touch in the left little finger." *Id.* Relevantly, Dr. Leinenbach diagnosed plaintiff with left elbow post-traumatic arthritis and left ulnar neuropathy. *Id.* Due to these diagnoses, he recommended a limitation to only occasional reaching, handling, fingering, and feeling. Tr. 408.

After summarizing Dr. Leinenbach's examination results, the ALJ found his opinion only

---

[6] Plaintiff's report to Dr. Leinenbach of left arm pain in September 2021 is the only instance of plaintiff complaining of such pain or limitation to a medical professional in the entire record. (ECF 7).

PAGE 13 – OPINION AND ORDER

partly persuasive because the ALJ reasoned plaintiff's limited range of motion of the left elbow and forearm supported reaching and handling limitations, but not more. Tr. 17-18, 407. The ALJ explained how Dr. Leinenbach's suggested limitations of left-sided fingering and feeling are unsupported by the "full strength and range of motion in the left hand and fingers" plaintiff exhibited during Dr. Leinenbach's physical examination of plaintiff. 19, 407. In doing so, the ALJ sufficiently considered the supportability and consistency of Dr. Leinenbach's medical opinion when concluding that the portions pertaining to her left arm were not supported by the physical examination. *See Coleman v. Saul*, 979 F.3d 751, 757 (9th Cir. 2020) (ALJ did not err in rejecting medical opinions that were unsupported by the objective medical evidence) (citing *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004); 20 C.F.R. §§ 404.1520c(a), 416.920c(a) (supportability is most important factor in considering persuasiveness of medical opinion). Thus, the ALJ properly cited to substantial evidence and reasonably explained why he found Dr. Leinenbach's limitations of occasional fingering and feeling unpersuasive.

   **B. Dr. Lancaster & Dr. Cuccaro**

  The ALJ found Dr. Lancaster's and Dr. Cuccaro's opinions "partly persuasive" because most of both opinions "are supported with an explanation, consistent with the consultative examiner at 10F, and not inconsistent with the other medical evidence, but . . . observations at the consultative examination at 10F do not support limitations on fingering and feeling." Tr. 18. Dr. Lancaster gave "[m]ajor weight" to the consultative examiner's opinion in forming their decision, including the unsupported portion of the consultative examiner's opinion. Tr. 70-71, 77. In turn, Dr. Cuccaro relied on Dr. Lancaster's opinion in forming their opinion on

reconsideration. Tr. 86-87, 91. Neither doctor provided an explanation other than the consultative examiner's assessment in determining a limitation to fingering and feeling. Tr. 70-78, 86-91.

Earlier in his decision, the ALJ documented the consultative examiner's relevant findings and explained how the limitations to fingering and feeling are unsupported because "claimant did not display any difficulty performing manipulative activities or grasping/gripping objects."[7] Tr. 18. Because both Dr. Lancaster and Dr. Cuccaro relied on an unsupported portion of the consultative examiner's in forming their limitations on fingering and feeling, their opinions on those limitations are similarly unpersuasive.

For these reasons, the ALJ's conclusions that Dr. Lancaster's and Dr. Cuccaro's medical opinions were partly persuasive comply with the regulations governing the Commissioner's evaluation of medical opinions and are supported by substantial evidence.

## CONCLUSION

Based on the foregoing, pursuant to 42 U.S.C. § 405(g), sentence four, the Court AFFIRMS the Commissioner's decision.

IT IS SO ORDERED.

DATED this _9_ day of May, 2025.

_____
ANDREW HALLMAN
United States Magistrate Judge

---

[7] Although ALJs typically dedicate a section of a decision to discuss the medical opinion evidence, ALJs are not required to repeat explanations for rejecting such opinions where the explanations are provided in other parts of the decision. For example, where an ALJ determined a claimant's ADLs were inconsistent with their impairment elsewhere in a decision, the ALJ was not required to echo the full explanation regarding inconsistency with ADLs in finding a medical source opinion was also inconsistent; a simple reference to those activities is sufficient. *See Soto v. Saul*, 814 F. App'x 233, 235 (9th Cir. 2020).